# Exhibit 2

Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 3ª Vara Criminal
Av. Erasmo Braga, 115 Lamina 2 / Sala 908 CEP: 20020-903 - Centro - Rio de Janeiro - RJ   e-mail: cap03vcri@tjrj.jus.br

Fls.

Processo: 0010153-50.2024.8.19.0001

**Processo Eletrônico**

Réu preso

Classe/Assunto: Ação Penal de Competência do Júri - Homicídio Qualificado (Art. 121, § 2º - CP); Furto Qualificado (Art. 155, § 4o. - CP); Homicídio Qualificado (Art. 121, § 2º - CP); Concurso de Pessoas (Arts. 29 a 31 - Cp)

Autor: MINISTÉRIO PÚBLICO
Réu: ALEJANDRO TRIANA PREVEZ
Réu: DANIEL SIKKEMA
Inquérito 901-00047/2024  15/01/2024  15ª Delegacia Policial

___

Nesta data, faço os autos conclusos ao MM. Dr. Juiz
Tula Correa de Mello

Em 09/02/2024

## Decisão

1) RECEBIMENTO DA DENÚNCIA

O Ministério Público vem a Juízo propor a presente ação penal em face de ALEJANDRO TRIANA PREVEZ e DANIEL SIKKEMA, qualificados nos autos, a prática, em tese, do crime de homicídio qualificado, conduta tipificada nos artigos artigo 121, §2º, I, II, III, IV e §4º, in fine, do CPP, respondendo Alejandro também nos termos artigo 155, § 1º e § 4º, inciso III, ambos do Código Penal.

Passo a avaliar o conteúdo apresentado e as pretensões inicialmente elencadas.

A MATERIALIDADE e a AUTORIA do crime estão indicadas pelos registros de ocorrência e registros aditados, termos de declaração (index 17, 50, 190, 192, 315, 413 e 502), auto de apreensão (index 25, 29, 136, 137, 138, 139, 412, 717 e 722), laudos (index 140, 285, 296, 299, 302, 306, 309, 312, 378, 380, 388, 399, 419, 484, 491, 703, 711, 741 e 758), Relatório Final (index 672) e decisão de indiciamento (index 673/674).

A denúncia expôs, com clareza, os fatos criminosos e todas as suas circunstâncias. Consta ainda a qualificação do denunciado e a precisa tipificação dos crimes imputados. Satisfeitos, assim, os pressupostos contidos no art. 41 do CPP e, afastada, por conseguinte, a incidência da regra contida no art. 395, I, do CPP, aplicável em razão da analogia capitulada no art. 3º do mesmo diploma processual.

Ademais, a interpretação, a contrario sensu, da regra inserta no inciso II, do art. 395 c/c com 3º, ambos do CPP, revela que a ação deve ser admitida em razão da ausência das causas de rejeição da denúncia, haja vista a presença dos pressupostos processuais e condições da ação penal.

Há, portanto, justa causa para a admissão da acusação, a contrario sensu da regra inserta no inciso III, do art. 395, do CPP, sendo certo que, no bojo do processo, à luz dos princípios do contraditório e da ampla defesa, poderão ser confirmadas, ou não, as acusações dirigidas ao

Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 3ª Vara Criminal
Av. Erasmo Braga, 115 Lamina 2 / Sala 908 CEP: 20020-903 - Centro - Rio de Janeiro - RJ    e-mail: cap03vcri@tjrj.jus.br



denunciado.

Por essas razões, RECEBO A DENÚNCIA.

Cite-se o denunciado para apresentar resposta escrita, no prazo de 10 (dez) dias, ocasião em que poderá arguir preliminares e alegar tudo o que interessa à sua defesa, além de oferecer documentos, especificar provas pretendidas e arrolar testemunhas, qualificando-as com o respectivo endereço, bem como justificando a necessidade de sua oitiva e intimação, quando for o caso (art. 406, §§1º a 3º do CPP).

Desde já fica ciente o advogado constituído pelo denunciado de que a defesa, consubstanciada na resposta à acusação deve ser técnica e que sua omissão poderá ensejar o decreto de abandono da causa e o pagamento de multa de 10 (dez) a 100 (cem) salários-mínimos, na forma do art. 265 do CPP.

Fica ciente, ainda, a defesa de que não serão deferidos requerimentos de diligências iniciais, de apresentação/substituição de rol de testemunhas ou de produção de provas periciais formulados em momento processual distinto da resposta à acusação (item 3.4.1.1 do Plano de Gestão para o Funcionamento de Varas Criminais e de Execução Penal do CNJ).

Caso o denunciado, regularmente citado, não constitua defensor nem apresente resposta no prazo legal, certifique-se e remetam-se os autos à DPGE para oferecer defesa, nos termos do art. 408 do CPP.

Efetivada a citação e juntada a defesa técnica devida, DÊ-SE VISTA DIRETAMENTE AO MP, nos termos do art. 409 do CPP.

COM O RETORNO, VOLTEM CONCLUSOS PARA FINS DE APRECIAÇÃO DAS MANIFESTAÇÕES DAS PARTES.

2) Junte-se a FAC dos acusados, bem como a pesquisa SIDIS. Oficie-se à Delegacia para que eventuais mídias sejam acauteladas fisicamente nesta serventia.

3) No que tange ao requerimento Ministerial de PRISÃO PREVENTIVA dos acusados, trata-se de Denúncia que imputa aos acusados as condutas de:
"Na madrugada do dia 14 de janeiro de 2024, na Rua Abreu Fialho, casa nº 13, no bairro de Jardim Botânico, nesta comarca, o denunciado ALEJANDRO, com vontade livre e consciente, em comunhão de ações e desígnios com o denunciado DANIEL, com intenção de matar, ofendeu a integridade física de BRENT FAY SIKKEMA, golpeando-o diversas vezes com uma faca, o que lhe causou lesões corporais. As lesões causadas em BRENT, por sua natureza e sede, foram a causa eficiente de sua morte, conforme laudo de necropsia acostado aos autos (anexo 26). Consta dos autos que BRENT FAY SIKKEMA era norte-americano e proprietário da galeria de arte "Grand Sikkema", em Nova York, sendo casado com o denunciado DANIEL até janeiro de 2023, com quem tinha um filho. Por sua vez, o denunciado ALEJANDRO trabalhou para o denunciado DANIEL como segurança na residência do ex-casal em Havana/Cuba. Restou apurado que o denunciado DANIEL contratou o denunciado ALEJANDRO, com a promessa de pagamento da quantia de U$ 200.000 (duzentos mil dólares), para matar BRENT. Assim, seguindo o plano criminoso previamente ajustado, ALEJANDRO veio para o Brasil, seguindo as coordenadas fornecidas por DANIEL e com auxílio financeiro prestado por este. No dia 13 de janeiro de 2024, o denunciado ALEJANDRO foi até a rua onde BRENT residia e ali permaneceu durante o dia todo, aguardando no interior do veículo Fiat/Palio, placa DID-1774. Na madrugada do dia seguinte, o denunciado ALEJANDRO desceu do automóvel e, utilizando-se das chaves fornecidas pelo denunciado DANIEL, entrou na residência da vítima. Ato contínuo, o denunciado ALEJANDRO foi até o quarto da vítima, surpreendendo-a e lhe desferindo diversos golpes com facadas, ocasião



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 3ª Vara Criminal
Av. Erasmo Braga, 115 Lamina 2 / Sala 908 CEP: 20020-903 - Centro - Rio de Janeiro - RJ    e-mail: cap03vcri@tjrj.jus.br



em que Brent caiu desfalecido na cama, conforme laudo de exame de local constante no anexo 196. Consigne-se que o denunciado DANIEL, além de ser o mandante do homicídio, foi o responsável por fornecer os meios (dinheiro, chaves e rotina da vítima no Brasil) para que o denunciado ALEJANDRO praticasse o crime. Logo após, nas mesmas circunstâncias de tempo e local, em novo desígnio criminoso, o denunciado ALEJANDRO, com vontade livre e consciente, subtraiu US$ 40.000,00 (quarenta mil dólares) e R$ 30.000,00 (trinta mil reais), tudo de propriedade da vítima, que se encontrava em cima de uma cômoda no quarto. Ato contínuo, na posse do dinheiro, o denunciado ALEJANDRO saiu do imóvel, retirou as luvas que vestira para executar o crime e se evadiu do local, ingressando de volta no veículo Fiat/Palio e se dirigindo a São Paulo. O crime de furto foi praticado durante o período de repouso noturno e com uso de chave falsa. 1.1. O crime de homicídio foi cometido mediante promessa de recompensa, eis que o denunciado DANIEL prometeu pagar ao denunciado ALEJANDRO o valor de US$ 200.000,00 (duzentos mil dólares), bem como lhe oferecer, sem ônus, a residência da vítima para morar. 1.2. O crime de homicídio foi cometido por motivo fútil, em razão de desavença quanto à divisão patrimonial decorrente do divórcio entre a vítima e o denunciado DANIEL. 1.3. O crime de homicídio foi cometido por meio cruel, eis que a vítima foi violentamente golpeada com dezoito facadas na região facial e tórax. 1.4. O crime de homicídio foi cometido, ainda, de modo a impossibilitar a defesa da vítima, uma vez que esta foi surpreendida pelo denunciado ALEJANDRO, que entrou em sua residência enquanto ela dormia e lhe desferiu as facadas. 1.5. O crime de homicídio foi cometido contra pessoa com 75 (setenta e cinco) anos de idade."

Em relação às evidências probatórias, destaca-se os seguintes depoimentos:

TESTEMUNHA SIMONE: "QUE a declarante comparece nesta Especializada a fim de prestar esclarecimentos sobre o autor dos fatos, ALEJANDRO TRIANA TREVEZ; QUE o ex-marido de BLENT, DANIEL SIKKEMMA, é cubano; QUE BLEND conheceu DANIEL SIKKEMMA em Miami; QUE BLEND possuía dois imóveis em CUBA, sendo um em Havana e outro em Varadero; QUE ALEJANDRO trabalhou para BLENT, nos imóveis que o mesmo possuía em Cuba; QUE ALEJANDRO, era administrador e segurança de confiança de BLENT; QUE a declarante não sabe informar o tempo que ALEJANDRO trabalhou com BLENT, mas acredita que tenha sido em torno de cinco anos; QUE a declarante não conhecia ALEJANDRO pessoalmente, mas o conhecia por fotos; QUE ALEJANDRO, foi contratado pelo próprio BLENT; QUE ALEJANDRO não foi indicado por DANIEL, e sim contratado através de uma agência de empregos; QUE BLEND também contratou outro cubano, chamado CRISTIAN, na mesma ocasião; QUE ALEJANDRO e CRISTIAN trabalhava na mesma função; QUE quando perguntada se sabe informar por qual motivo ALEJANDRO parou de trabalhar para BLENT, não sabe dizer; QUE na data de hoje, 18/01/2024, quando viu o nome de ALEJANDRO nos jornais, a declarante entrou em contato com DANIEL, perguntando se o mesmo tinha conhecimento de quem tinha matado BLENT; QUE DANIEL ainda não tinha essa informação, tendo o mesmo chorado muito; QUE DANIEL disse que ALEJANDRO cuidava do filho, LUCAS, quando estavam em Cuba; QUE a declarante perguntou para DANIEL, se houve alguma briga na demissão de ALEJANDRO, e o mesmo não sabia dizer; QUE a declarante perguntou para DANIEL se BLENT devia algum dinheiro para ALEJANDRO, e o mesmo disse que não devia; QUE a declarante também perguntou para DANIEL, se BLENT tinha ou teve alguma relação com ALEJANDRO, o mesmo disse que não sabia, acrescentando que BLENT era uma pessoa muito promíscua, e por isso que o deixou; QUE DANIEL é uma pessoa muito decente; QUE BLENT queria voltar para DANIEL, mas o mesmo não queria; QUE DANIEL disse para a declarante que ALEJANDRO andou ligando para ele, mas não sabe dizer o que conversavam; QUE DANIEL não tinha nada para falar com ALEJANDRO; QUE quando perguntada se ALEJANDRO é homossexual, informa que sim; QUE durante a pandemia, BLENT e DANIEL, foram morar em CUBA, ocasião em que ficavam integralmente com ALEJANDRO, que já trabalhava para eles; QUE quando acabou a pandemia, BLENT, DANIEL e o filho, voltaram a moram em Nova York; QUE quando voltaram para NY, quem pagava ALEJANDRO era a tia de DANIEL que mora em Cuba, com dinheiro dado por BLENT; QUE a declarante não sabe informar quando e por qual motivo ALEJANDRO não trabalhava mais para BLEND, porém como o mesmo



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 3ª Vara Criminal
Av. Erasmo Braga, 115 Lamina 2 / Sala 908CEP: 20020-903 - Centro - Rio de Janeiro - RJ   e-mail: cap03vcri@tjrj.jus.br

era segurança do imóvel em Havana, e como BLENT havia colocado a casa em nome dessa tia, a mesma foi morar no imóvel, dizendo que era dela; QUE acredita que por este motivo, BLENT demitiu ALEJANDRO, pois não precisava mais de seus serviços; QUE BLENT esteve no Brasil no ano passado (2023), tendo chegado no Rio de Janeiro, em 19/07/2023, e saido no dia 29/07/2023; QUE quando BLENT estava no RJ, em julho/2023, o mesmo comentou com a declarante que iria encontrar com o ex-funcionário dele, ALEJANDRO; QUE a declarante não sabia o motivo pelo qual BLENT iria encontrar com ALEJANDRO; QUE a declarante soube que BLENT teria ido para Cuba há poucos meses; QUE ao olhar no passaporte de BLENT, consta que o mesmo chegou em Cuba em 14/10/2023; QUE não tem a data de saída de Cuba no passaporte de BLENT; QUE BLENT não comentou mais nada de ALEJANDRO com a declarante; QUE a declarante desconhece o motivo de ALEJANDRO ter matado BLENT; QUE pode ser que ALEJANDRO e BLENT estivesse tendo um caso, apesar de não ter comentado nada sobre isso; QUE BLENT ajudava ALEJANDRO financeiramente, como outros também; QUE BLENT era uma pessoa generosa; QUE quando foi realizada a arrecadação da imagens no local do fato, pela equipe de investigação de segmento, no dia 16/01/2024, foi encontrado um chaveiro em cima da mesa da casa, local do fato, que foi entregue para declarante; QUE no referido chaveiro possuia a chave de entrada da casa, e a chave do cofre; QUE a declarante possuia a senha do cofre, e não a chave do mesmo; QUE o cofre da casa de BLENT, abre com chave, ou com senha; QUE no dia em que a declarante encontrou o corpo de BLENT, no dia 15/01/2024, o policial militar, comunicante da ocorrência, perguntou para declarante se tinha o documento do mesmo; QUE a declarante disse que tinha o passaporte de BLENT, e que o mesmo deveria estar no cofre, e que então o policial pediu para que abrisse o mesmo; QUE a declarante colocou uma luva, e abriu o cofre, oportunidade em que pegou o documento, e que não havia dinheiro no cofre; QUE como a declarante disse anteriormente, BLENT costumava deixar o dinheiro na bancada de seu quarto, ou em uma caixa redonda que ficava também na bancada; QUE DANIEL e BLEND se casaram no dia 09/12/1993, e que a dissolução do matrimônio, estava em andamento; QUE a separação de fato, entre BLENT E DANIEL, se deu em janeiro de 2022; QUE após a separação, em 2022, BLENT, alterou o testamento, colocando todo patrimônio que estava em nome de DANIEL, em nome do filho; QUE BLENT possuía dois testamentos, um confeccionado em Nova York, e o que outro confeccionado em relação aos bens no Brasil; QUE BLENT quanto alterou seu testamento, enviou para declarante; QUE DANIEL SIKKEMMA, não sabia do teor da alteração, porém sabia que BLENT faria alterações; QUE em relação aos imóveis de CUBA, um imóvel já estava em nome do filho, e outro em nome de uma tia de DANIEL; QUE na data de ontem, 17/01/2024, a declarante passou para DANIEL o teor do testamento; QUE a declarante não sabe a senha do telefone celular de BLENT, pois o mesmo mudava sempre; QUE quem mudava a senha do telefone celular de BLENT era o suporte de informática pessoal e da galeria de BLENT; QUE a declarante falou com a funcionária, MEG - +1 (917) 2503616, que iria falar com a pessoa responsável sobre a senha; QUE a declarante acredita que BLENT estava dormindo quando foi esfaqueado; QUE BLENT tinha o costume em dormir pelado com uma toalha por baixo do corpo, do jeito em que foi encontrado; QUE nada mais disse;"

O acusado ALEJANDRO, cubano, no index 413 confessa pormenorizadamente o delito de Homicídio Qualificado, explicitando todas as suas relações pretéritas com DANIEL SIKKEMA, ex marido da vítima, apontando-o como autor mediato do delito, as promessas de recompensa feitas por DANIEL em troca da morte da vítima, as transferências monetárias já realizadas, negando, contudo, que tenha subtraído qualquer pertence da vítima: QUE presta seu termo de declaração acompanhado dos seus advogados Dr. GREGÓRIO ANTÔNIO FERNANDES DE ANDRADE, OAB/MG: 166925 e EDNA FERREIRA DE CASTRO LOURENÇO BARCELOS, OAB/RJ: 226784; QUE neste ato está ciente de seus direitos constitucionais, inclusive de permanecer calado, mas opta por dar sua versão dos fatos; QUE presta depoimento no interior da Cadeia Pública Joaquim Ferreira de Souza, onde encontra-se detido; QUE inicialmente, o declarante gostaria de relatar que está extremamente arrependido e encontra-se em depressão em razão do crime cometido contra a vítima BRENT SIKKEMA; QUE o declarante trabalhava como professor em uma escola politécnica em Havana, Cuba; QUE em 2019, seu avô materno falece e o declarante precisava de mais



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 3ª Vara Criminal
Av. Erasmo Braga, 115 Lamina 2 / Sala 908CEP: 20020-903 - Centro - Rio de Janeiro - RJ   e-mail: cap03vcri@tjrj.jus.br

dinheiro para ajudar a sustentar a família; QUE o declarante passa a procurar emprego no Facebook e encontrou uma vaga para trabalhar como segurança em uma casa situada na região conhecida como Bosque, em Havana; QUE essa região é cercada por bases militares cubanas; QUE o anúncio havia sido veiculado por DANIEL SIKKEMA, ex-marido da vítima; QUE foi o próprio DANIEL que entrevistou e contratou o declarante; QUE o declarante prestou o serviço militar obrigatório em Cuba, tendo inclusive integrado as forças especiais do exército cubano (Boinas Verdes); QUE DANIEL sabia disso e, por isso o declarante foi recrutado para guardar a casa no Bosque; QUE na maior parte do ano, a casa ficava vazia, DANIEL, que morava em Nova York, só visitava o imóvel algumas semanas durante o ano; QUE apesar da casa ser cercada por bases militares, DANIEL temia por sua segurança, pelo fato de ter cidadania dupla: cubana e americana; QUE o fato de DANIEL ser americano, ter renunciado a cidadania cubana, ter casado com um americano e ser homossexual, não era bem visto pelo regime cubano, o que deixava a propriedade vulnerável à pratica de crimes; QUE trabalhou nessa casa por um ano e, durante esse tempo, nunca viu BRENT SIKKEMA; QUE DANIEL visitava a casa apenas com LUCAS, filho do casal; QUE BRENT costumava visitar Cuba, mas nunca ficava na casa do Bosque; QUE o declarante acredita que BRENT nunca residiu em Cuba; QUE BRENT tinha uma cobertura em Havana que acredita estar no nome da prima de DANIEL, cujo nome não sabe informar; QUE a casa do Bosque o declarante acredita estar no nome de BRENT; QUE o declarante decide vir ao Brasil, pois o salário que recebia como segurança já não era suficiente para sustentar a si e sua família; QUE o declarante consegue o visto brasileiro em dezembro de 2021 e muda-se para o Brasil em setembro de 2022, instalando-se em um imóvel na cidade de São Paulo que pertencia a ROSE REIS DE SOUZA, amiga de sua mãe; QUE chegando ao Brasil, passou aproximadamente um mês na casa de ROSE e depois mudou-se para uma kitnet que pertence a ROSE; QUE pagou cerca de dois meses de aluguel para ROSE, até o momento em que esta o desobriga de pagá-la qualquer valor; QUE o declarante se sustentava realizando bicos; QUE desde que parou de trabalhar como segurança, deixou de se comunicar com DANIEL tendo retomado o contato somente em 2023; QUE acredita que em novembro de 2022, ROSE tenha dado ao declarante um telefone XIAOMI REDMI 9A, tendo em vista que o telefone Samsung J4 que trouxe de Cuba não funcionava bem; QUE durante a habilitação desse novo celular, o declarante fez o download de seus contatos antigos que estavam armazenados na nuvem; QUE percebeu o contato de DANIEL, mas só foi procurá-lo no meio do ano de 2023; QUE como já HMM muitos meses que não falava com DANIEL, o declarante resolveu mandar uma mensagem de Whatsapp para saber como DANIEL estava; QUE DANIEL disse que estava passando por um difícil processo de divórcio com BRENT ao que o declarante respondeu que poderia dar apoio emocional, caso necessário; QUE cerca de 10 minutos depois, DANIEL liga para o declarante e conta todos os problemas que tinha com BRENT; QUE DANIEL reclamava do baixo valor da pensão que BRENT repassava para DANIEL; QUE DANIEL dizia que BRENT gastava muito dinheiro com drogas, festas e garotos de programa e não sobrava o suficiente para ajudar no sustento de LUCAS; QUE DANIEL ofereceu $ 200.00,00 (duzendo mil dólares) ao declarante caso este concordasse em matar BRENT; QUE além disso, DANIEL também prometeu ao declarante que passaria a ajudá-lo financeiramente no que o declarante precisasse; QUE DANIEL prometeu ao declarante que este poderia passar a morar na casa situada à Rua Abreu Fialho, 13, no Jardim Botânico, cuidando do imóvel como caseiro; QUE o declarante disse que iria pensar na proposta; QUE de Nova York, através da empresa Western Union, DANIEL passa a enviar dólares ao declarante; QUE a primeira remessa foi d $300,00 (trezentos dólares), a segunda de $1000,00 (mil dólares) e as demais em torno de $500,00 (quinhentos dólares) mensalmente; QUE as transferências, em sua maioria, eram enviadas por um homem de nome PEDRO de Nova York; QUE o declarante acredita que uma dessas transferências tenha sido feito em nome de DANIEL, mas não tem certeza; QUE DANIEL tinha acesso à conta do site AirBnB de BRENT e, através disso, conseguia monitorar as viagens da vítima; QUE DANIEL instrui o declarante a tirar uma CNH brasileira, comprar um telefone celular novo e informa os dados e o endereço de BRENT no Rio de Janeiro; QUE foi perguntado se o declarante possui intimidade com DANIEL SIKKEMA, e responde que o seu contato com ele era profissional; QUE diz que, com o tempo de trabalho, passou a ter proximidade com o filho de DANIEL, LUCAS, e diz que sentia carinho por ele; QUE considera DANIEL uma pessoa

Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 3ª Vara Criminal
Av. Erasmo Braga, 115 Lamina 2 / Sala 908 CEP: 20020-903 - Centro - Rio de Janeiro - RJ    e-mail: cap03vcri@tjrj.jus.br

manipuladora; QUE o contato de DANIEL no celular do declarante estava salvo como "DANIEL BOSS" e também como "ZALGUIEN"; QUE com relação ao contato ZALGUIEN, o declarante afirma que foi DANIEL quem o instruiu a não salvá-lo com o nome verdadeira; QUE esse é o contato atual de DANIEL nos Estados Unidos; QUE DANIEL disse ao declarante que comprasse um chip de celular, para que fosse habilitado no telefone do declarante e, dessa forma, fosse passado a DANIEL o código de acesso do Whatsapp; QUE o declarante assim o fez e o número de CPF que seria utilizado para cadastrar a linha foi informado por DANIEL; QUE DANIEL enviou uma foto de um documento, que o declarante não sabe qual é, mas que continha a referida informação; QUE o declarante não lembra quem era a pessoa titular do CPF, sabendo apenas que o primeiro nome era MARIA; QUE o declarante não sabe quem é essa MARIA; QUE DANIEL utilizaria essa linha exclusivamente para comunicar-se com o declarante via Whatsapp utilizando uma rede Wi-Fi; QUE as ligações e mensagens eram sempre por Whatsapp e o nome do contato era RAIMUNDO DOMINGUEZ e o número era +55 (11) 99243-3295; QUE antes de julho de 2023 (não sabe precisar quando), DANIEL envia ao declarante, pelo correio, a cópia da chave da casa situada à Rua Abreu Fialho, 13, Jardim Botânico; QUE DANIEL envia a chave de Nova York e o declarante vai buscá-la em uma unidade da empresa DHL, em São Paulo; QUE o declarante, em julho ou agosto de 2023, vem ao Rio de Janeiro no intuito de planejar como executaria o crime; QUE o declarante hospeda-se em uma casa no Jardim Botânico, próximo ao endereço da vítima, e as despesas eram pagas com os dólares enviados por DANIEL; QUE alugou a casa pelo site AirBnB; QUE nessa época ainda estava decidindo se aceitaria ou não a proposta de DANIEL; QUE DANIEL tinha dito ao declarante que BRENT não estaria em casa nesse período; QUE foi ao Rio de Janeiro e voltou a São Paulo de ônibus; QUE retornou ao Rio de Janeiro em dezembro de 2023; QUE novamente foi de ônibus e hospedou-se em uma casa no Jardim Botânico, alugada pelo AirBnB; QUE DANIEL havia lhe avisado que BRENT estaria em casa dessa vez; QUE o declarante entrou na residência utilizando à chave enviada por DANIEL; QUE no interior da casa ligou para DANIEL e informou que BRENT dormia no quarto e que a porta estava trancada; QUE DANIEL instruiu declarante a fazer algo para tirar BRENT do quarto, mas o declarante ainda está indeciso; QUE o declarante desliga o disjuntor da residência para forçar BRENT a sair do quarto; QUE o declarante nota que BRENT acorda, mas, muito nervoso, o declarante resolve deixar a casa, sem praticar o homicídio; QUE o declarante afirma que DANIEL o instruiu a dizer a BRENT, caso fosse descoberto no interior da residência, que era filho de SIMONE, sua advogada; QUE o declarante retorna à São Paulo; QUE DANIEL se aborrece com o declarante e para de lhe enviar dinheiro, dizendo "SE NÃO QUISER FAZER ISSO, NÃO FAZ, MAS ESQUECE QUE EU EXISTO"; QUE sem receber dinheiro de DANIEL, o declarante passa a trabalhar realizando entregas pela empresa Mercado Livre, utilizando um FIAT/PALIO que lhe foi emprestado por ROSE; QUE nem ROSE nem ninguém de sua família sabia do plano de assassinar BRENT; QUE o declarante, vendo-se sem dinheiro para se sustentar e enviar para sua família em Cuba, decide aceitar a proposta de DANIEL; QUE aproveitando-se que estava com o carro de ROSE a sua disposição, já que esta havia viajado, o declarante parte para o Rio de Janeiro no dia 13/01/2024 de manhã cedo; QUE chega ao Rio de Janeiro por volta das 14h e inicialmente permanece estacionado em uma rua perpendicular a Rua Abreu Fialho; QUE por volta das 16h30min, estaciona o veículo na Rua Abreu Fialho, próximo à casa de BRENT; QUE em determinado momento, passa ao banco traseiro do veículo para que não fosse visto pelos pedestres; QUE por volta das 03h30min do dia 14/01/2024, o declarante percebe que a rua estava sem movimento e decide
 adentrar a residência e executar o crime; QUE o declarante, utilizando a chave enviada por DANIEL, entra no imóvel; QUE DANIEL havia avisado ao declarante que BRENT estava em casa e que este só dormia à base de remédios; QUE o declarante entrou em silêncio e revistou todos os cômodos para garantir que BRENT estava sozinho; QUE dirigiu-se até a cozinha de onde retirou do faqueiro a faca utilizada no crime; QUE subiu as escadas com cuidado para não fazer ruído e dirigiu-se ao quarto de BRENT e, ao abrir a porta, encontrou a vítima deitada na cama; QUE se recorda de ter efetuado cerca de quatro facadas na vítima; QUE ao confirmar que BRENT estava morto o cobriu com o cobertor, almofadas e toalhas, tendo em vista que não queria ficar olhando para o rosto da vítima; QUE retornou à cozinha, lavou as mãos e a faca na pia e devolveu a faca ao faqueiro; QUE saiu da casa, entrou no carro e retornou à São Paulo; QUE logo após entrar no



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 3ª Vara Criminal
Av. Erasmo Braga, 115 Lamina 2 / Sala 908CEP: 20020-903 - Centro - Rio de Janeiro - RJ    e-mail: cap03vcri@tjrj.jus.br



carro, liga para a linha+55 (11) 99243-3295 para falar com DANIEL, mas este não atende; QUE por volta das 07h do dia 14/01/2024, DANIEL liga para o declarante e este lhe conta detalhes do ocorrido; QUE DANIEL havia dito que se livraria do celular que usava para se comunicar com o declarante após o crime; QUE DANIEL instruiu o declarante a apagar o registro de chamadas, mas o declarante não o fez; QUE chega em São Paulo, vai para casa, toma banho e tenta dormir, mas não consegue; QUE o declarante estaciona o PALIO na casa de ROSE; QUE DANIEL entra em contato com o declarante através do número de sua parente MAYRA, dizendo que a polícia do Rio de Janeiro já possuía imagens do declarante e a placa do carro utilizado; QUE DANIEL disse que o declarante deveria sair do Brasil; QUE o declarante faz uma pesquisa na internet e verifica que a notícia da morte de BRENT já havia sido divulgada na mídia; QUE viu imagens de si mesmo e do PALIO nas reportagens; QUE o declarante sai de São Paulo dirigindo um PALI WEEKEND que havia comprado com o dinheiro enviado por DANIEL; QUE o declarante levava consigo $3000,00 (três mil dólares) e R$3100,00 (três mil e cem reais) que DANIEL havia lhe enviado pelo correio; QUE o declarante havia comprado uma besta pelo site Mercado Livre pelo valor R$ 2300,00 (dois mil e trezentos reais) e planejava utilizá-la para matar BRENT; QUE chegou a levar a besta consigo no dia 13/01/2024 e a deixou dentro do carro; QUE em determinado momento, puxa o banco do veículo para trás para armar a besta; QUE o declarante desistiu de utilizar a besta e optou por usar uma faca; QUE afirma não conhecer BELKIS ZULUETA; QUE para se comunicar com o declarante, DANIEL também utilizava o telefone de MAYRA, que é prima ou tia de DANIEL;QUE DANIEL só passou a usar o contato de MAYRA após o crime; QUE o declarante não conhece MAYRA, mas sabe que mora com DANIEL em Nova York; QUE DANIEL disse ao declarante que estava com problemas com uma prima, cujo nome o declarante não sabe informar; QUE BRENT teria transferido um imóvel para essa prima, pois ninguém pode ter mais de uma propriedade em Havana; QUE a prima teria se apossado do imóvel e recusava-se a sair; QUE DANIEL procurava alguém em Cuba que estivesse disposto a dar uma surra no marido dessa prima e chegou a pedir indicação a ALEJANDRO; QUE essa prima pedia $20.000,00 (vinte mil dólares) para sair da casa; QUE ALEJANDRO afirma que não subtraiu nenhum pertence de BRENT da residência; QUE o declarante disse não ter visto nenhum dinheiro ou cofre na casa; QUE DANIEL disse ao declarante que estava preocupado com o relacionamento que BRENT estava mantendo com um uruguaio ou paraguaio, e que isto poderia de alguma forma, prejudicar DANIEL na repartição dos bens; QUE o declarante planejava fugir pela fronteira com o Peru. E nada mais disse."

Segundo o Laudo de Necropsia: "(...) observam-se múltiplas feridas anguladas, incisas e perfuroincisas, lineares, algumas superficiais (por mecanismo de deslizamento), outras profundas (por mecanismo de pressão e perfuração), com bordas e vertentes regulares, localizadas na face e tronco, totalizando 18 (dezoito) ações cortantes e perfurocortantes; dentre as lesões uma delas transversal na porção anterior do pescoço que não atingiu a traqueia ou os vasos cervicais; as lesões que perfuraram estão concentradas no hemitórax esquerdo; não há lesões de defesa nos membros superiores (...)"

Trata-se de crime que possui gravidade concreta, com grande repercussão social, tratando-se de vítima estrangeira residente no Brasil, cometido segundo os indícios, mediante paga, por motivo fútil e com diversas facadas, sem defesa da vítima.

Os acusados são estrangeiros, sendo que DANIEL encontra-se em Local incerto e não sabido (supostamente no exterior) e ALEJANDRO confessa que pretendia fugir pela fronteira com o Peru após ser descoberto.

Desta forma, presentes indícios da autoria, em que pese se tratar a prisão de medida excepcional na ordem constitucional, a qual somente se justifica para acautelar interesses que se sobrepõem ao ius libertatis do indivíduo, as circunstâncias que norteiam a apuração do fato estão a recomendar a adoção da medida de cautela, pelo que DECRETO AS PRISÕES PREVENTIVAS de ALEJANDRO TRIANA PREVEZ e DANIEL SIKKEMA, o que faço com fulcro nos arts. 311 e 312,



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 3ª Vara Criminal
Av. Erasmo Braga, 115 Lamina 2 / Sala 908CEP: 20020-903 - Centro - Rio de Janeiro - RJ   e-mail: cap03vcri@tjrj.jus.b



do Código de Processo Penal, para garantia da ordem pública, por conveniência da instrução criminal e para garantia da futura aplicação da lei penal, tratando-se de medida absolutamente imprescindível para resguardar os meios e os fins da presente ação penal, não sendo suficientes as Medidas Cautelares previstas no Art. 319 do CPP.

Expeçam-se os Mandados de Prisão, com prazo de 20 (vinte) anos para cumprimento, bem como as comunicações devidas.

3) Considerando que há notícias de que o acusado DANIEL se encontra no exterior, encaminhe-se o Mandado de Prisão à difusão Vermelha da Interpol (Red Notice), através do canal competente da Polícia Federal. Desde já este juízo compromete-se a requerer a extradição do acusado, no caso de localização e prisão no exterior.

Considerando o final de Semana e Feriado, bem como a possibilidade de deslocamento do acusado - também no exterior - onde supostamente se encontra, encaminhem-se o Mandado de Prisão, as principais peças (Denúncia; Decisão; foto do acusado - se houver; ofício solicitando a inclusão, contendo a transcrição legal do tipo penal imputado e o compromisso assumido por este juízo) ao Plantão Judiciário para que estabeleça contato com o setor competente da Polícia Federal.

4) Dê-se ciência as partes. Publique-se, Registre-se, Intime-se e Cumpra-se.

Rio de Janeiro, 09/02/2024.

Tula Correa de Mello - Juiz Titular

_____

Autos recebidos do MM. Dr. Juiz

Tula Correa de Mello

Em ____/____/_____

Código de Autenticação: 4TTU.DL6K.4C2Z.4FU3
Este código pode ser verificado em: www.tjrj.jus.br – Serviços – Validação de documentos



110                                       TULA

Case 1:25-cv-00042-UNA   Document 4-2   Filed 01/09/25   Page 10 of 17 PageID #: 162


**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
Idioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
Telefone/Phone/Whatsapp +55 11 9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com (skype: antonio.dari)

TRANSLATION No. WT- 31180          BOOK No. 214          PAGE No. 001

I, the undersigned Sworn Translator and Commercial Interpreter, hereby CERTIFY this is the description and faithful translation of a DOCUMENT written in Portuguese, which I translate as follows:

=================================================================

State of Rio de Janeiro Judiciary Branch
Court of Justice
Judicial District of the Capital
Registry Office of the 3rd Criminal Court
Av. Erasmo Braga, 115 Lamina 2 / Sala 908 CEP: 20020-903 - Downtown - Rio de Janeiro - RJ email: cap03vcri@tjrj.jus.br
Pages
**Process: 0010153-50.2024.8.19.0001**
**Electronic Process**
**Defendant arrested**
Class/Subject: Jury's Criminal Action - Aggravated Homicide (Art. 121, Paragraph 2 - CP); Qualified Theft (Art. 155, Paragraph 4 - CP); Aggravated Homicide (Art. 121, Paragraph 2 - CP); Joinder of Defendants (Arts. 29 to 31 - Cp)
Claimant: PROSECUTION OFFICE
Defendant: ALEJANDRO TRIANA PREVEZ
Defendant: DANIEL SIKKEMA
Inquiry 901-00047/2024 01/15/2024 15th Police Station

On this date, I submit the completed records to Honorable Judge
Tula Correa de Mello
On 02/09/2024
**Decision**

1)    RECEIPT OF THE COMPLAINT
The Prosecution Office comes to Court to propose this criminal action against ALEJANDRO TRIANA PREVEZ and DANIEL SIKKEMA, qualified in the case file, as committing, in theory, the crime of aggravated homicide, conduct typified in articles article 121, Paragraph 2, I, II, III, IV and Paragraph 4, in fine, of the CPP, Alejandro also responding under article 155, Paragraph 1 and Paragraph 4, item III, both of the Penal Code.
I proceed to evaluate the content presented and the intentions initially listed.
The MATERIALITY and AUTHORSHIP of the crime are indicated by the occurrence records and added records, terms of declaration (index 17, 50, 190, 192, 315, 413 and 502), arrest report (index 25, 29, 136, 137, 138, 139, 412, 717 and 722), reports (Index 140, 285, 296, 299, 302, 306, 309, 312, 378, 380, 388, 399, 419, 484, 491.703, 711.741 and 758), report Final (index 672) and indictment decision (index 673/674).
The complaint clearly exposed the criminal facts and all their circumstances. It also includes the qualification of the accused and the precise typification of the crimes charged. Therefore, the assumptions contained in art. 41 of the CPP and, therefore, the application of the rule contained in art. 395, I, of the CPP, applicable due to the analogy set forth in art. 3 of the same procedural diploma.
Furthermore, the interpretation, *a contrario sensu*, of the rule inserted in item II of art. 395 c/c with 3, both from the CPP, reveals that the action must be admitted due to the absence of reasons for rejecting the complaint, given the presence of the procedural assumptions and conditions of the criminal action.
There is, therefore, a cause for the admission of the accusation, *a contrario sensu* to the rule inserted in section III, of art. 395, of the CPP, it is certain that, within the process, in light of the principles of contradictory and broad defense, the accusations directed against the accused may or may not be confirmed.
For these reasons, I RECEIVE THE COMPLAINT.
The defendant must be summoned to present a written response, within ten (10) days, at which time he will be able to raise preliminary arguments and allege everything that is relevant to his defense, in addition to offering documents, specifying the desired evidence and calling witnesses, qualifying them with the respective address, as well as justifying the need for its hearing and subpoena, when applicable (art. 406, Paragraphs 1 to 3 of the CPP).



**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**

TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
Idioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP: 55.292-210
Telefone/Phone/Whatsapp +55 11 9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com (skype: antonio.dari)

TRANSLATION No. WT- 31180        BOOK No. 214        PAGE No. 002

The lawyer appointed by the defendant is now aware that the defense, embodied in the response to the accusation, must be technical and that his omission may result in the decree abandoning the case and the payment of a fine of ten (10) to 100 (one hundred) minimum wages, in accordance with art. 265 of the CPP.

The defense is also aware that requests for initial investigations, presentation/replacement of a list of witnesses or production of expert evidence formulated at a procedural point other than the response to the accusation will not be granted (item 3.4.1.1 of the Management Plan for the Operation of Criminal and Penal Execution Courts of the CNJ).

If the accused, regularly summoned, does not constitute a defender or present a response within the legal deadline, make sure and send the case to DPGE to offer a defense, in accordance with art. 408 of the CPP.

Once the summons has been served and the due technical defense has been attached, REPORT DIRECTLY TO THE PROSECUTION OFFICE, under the terms of art. 409 of the CPP.

WITH THE RETURN, IT SHALL BE RETURNED CONCLUDED FOR THE PURPOSE OF APPRECIATING THE PARTIES' MANIFESTATIONS.

2)    Join the FAC of the accused as well as the SIDIS search. Inform the Police Station so that any media can be physically taken care of in this service.

3)    Regarding the Ministerial request for PREVENTIVE PRISON of the accused, it is a Complaint that imputes to the accused the conduct of:

"In the early hours of January 14, 2024, at Rua Abreu Fialho, house no. 13, in the Jardim Botânico neighborhood, in this district, the accused ALEJANDRO, with free and conscious will, in communion of actions and designs with the accused DANIEL, with the intention of killing, offended the physical integrity of BRENT FAY SIKKEMA, striking him several times with a knife, which caused bodily injuries. The injuries caused to BRENT, due to their nature and thirst, were the efficient cause of his death, according to the autopsy report attached to the file (appendix 26). It appears from the file that BRENT FAY SIKKEMA was North American and owner of the art gallery "Grand Sikkema", in New York, being married to the accused DANIEL until January 2023, with whom he had a son. In turn, the accused ALEJANDRO worked for the accused DANIEL as a security guard at the former couple's residence in Havana/Cuba. It was discovered that the accused DANIEL hired the accused ALEJANDRO, with the promise of payment of the amount of two hundred thousand US dollars (USD 200,000), to kill BRENT. Thus, following the previously agreed criminal plan, ALEJANDRO came to Brazil, following the coordinates provided by DANIEL and with financial assistance provided by him. On January 13, 2024, the accused ALEJANDRO went to the street where BRENT lived and remained there throughout the day, waiting inside the Fiat/Palio vehicle, license plate DID-1774. In the early hours of the following day, the accused ALEJANDRO got out of the car and, using the keys provided by the accused DANIEL, entered the victim's residence. Immediately, the accused ALEJANDRO went to the victim's room, surprising him and stabbing him several times, at which time Brent fell unconscious on the bed, according to the site examination report contained in Annex 196. It should be noted that the accused DANIEL, in addition to being the person who ordered the murder, was responsible for providing the means (money, keys and the victim's routine in Brazil) for the accused ALEJANDRO to commit the crime. Soon after, under the same circumstances of time and place, with a new criminal design, the accused ALEJANDRO, with free and conscious will, stole forty thousand US dollars (USD 40,000.00) and thirty thousand Brazilian Reais (BRL 30,000.00), all belonging to the victim, which was on top of a dresser in the bedroom. Immediately, in possession of the money, the accused ALEJANDRO left the property, removed the gloves he had worn to carry out the crime and fled the scene, getting back into the Fiat/Palio vehicle and heading to São Paulo. The crime of theft was committed during the night's rest period and using a false key. 1.1. The crime of homicide was committed with the promise of a reward, and the accused DANIEL promised to pay the accused ALEJANDRO the amount of two hundred thousand US dollars (USD 200,000.00), as well as offering him, free of charge, the victim's residence to live in. 1.2. The crime of homicide was committed for a futile reason, due to a disagreement regarding the division of assets resulting from the divorce between the victim and the accused DANIEL. 1.3. The crime of homicide was committed by cruel means, as the victim was violently stabbed with eighteen stab wounds to the facial and chest region. 1.4. The crime of homicide was also committed in such a way as to make it impossible for the victim to defend himself, as he was surprised by the accused ALEJANDRO, who entered his residence while he was sleeping and stabbed him. 1.5. The crime of homicide was committed against a person of seventy-five (75) years old."

Regarding the probative evidence, the following statements stand out:

WITNESS SIMONE: "THAT the declarant appears in this Specialized Court in order to provide clarifications about the author of the facts, ALEJANDRO TRIANA TREVEZ; THAT BLENT's ex-husband, DANIEL SIKKEMMA, is a Cuban citizen;



**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**

TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
Idioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11 9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com (skype: antonio.dari)

TRANSLATION No. WT- 31180       BOOK No. 214       PAGE No. 003

THAT BLEND met DANIEL SIKKEMMA in Miami; THAT BLEND owned two properties in CUBA, one in Havana and the other in Varadero; THAT ALEJANDRO worked for BLENT, in properties he owned in Cuba; THAT ALEJANDRO was BLENT's trusted administrator and security guard; THAT, the declarant does not know how long ALEJANDRO worked with BLENT, but believes it was around five years; THAT the declarant did not know ALEJANDRO personally, but knew him from photos; THAT ALEJANDRO, was hired by BLENT himself; That ALEJANDRO was not recommended by DANIEL, but hired through an employment agency; THAT BLEND also hired another Cuban citizen, called CRISTIAN, on the same occasion; THAT ALEJANDRO and CRISTIAN worked in the same role; THAT, when asked if he knows why ALEJANDRO stopped working for BLENT, he cannot say; THAT on today, 01/18/2024, when he saw ALEJANDRO's name in the newspapers, the declarant contacted DANIEL, asking if he was aware of who had killed BLENT; THAT DANIEL still did not have this information, and he cried a lot; THAT DANIEL said that ALEJANDRO took care of his son, LUCAS, when they were in Cuba; THAT the declarant asked DANIEL if there was any fight during ALEJANDRO's dismissal, and he could not say it; THAT, the declarant asked DANIEL if BLENT owed any money to ALEJANDRO, and he said he didn't owe it; THAT the declarant also asked DANIEL if BLENT had or have any relationship with ALEJANDRO, he said he did not know, adding that BLENT was a very promiscuous person, and that's why he left him; THAT DANIEL is a very decent person; THAT BLENT wanted to return to DANIEL, but he did not; THAT DANIEL told the declarant that ALEJANDRO had been calling him, but he could not say what they were talking about; THAT DANIEL had nothing to talk about with ALEJANDRO; THAT when asked if ALEJANDRO is homosexual, he says yes; THAT during the pandemic, BLENT and DANIEL went to live in CUBA, at which time they stayed fully with ALEJANDRO, who already worked for them; THAT when the pandemic ended, BLENT, DANIEL and their son returned to live in New York; THAT when they returned to NY, the person who paid ALEJANDRO was DANIEL's aunt who lives in Cuba, with money given by BLENT; THAT the declarant is unable to inform when and for what reason ALEJANDRO no longer worked for BLEND, but as he was security for the property in Havana, and as BLENT had put the house in the name of such aunt, she went to live in the property, saying that it was hers; THAT he believes that for this reason, BLENT fired ALEJANDRO, as he no longer needed his services; THAT BLENT was in Brazil last year (2023), having arrived in Rio de Janeiro, on 07/19/2023, and leaving on 07/29/2023; THAT when BLENT was in RJ, in July/2023, he mentioned to the declarant that he was going to meet his former employee, ALEJANDRO; THAT the declarant did not know the reason why BLENT would meet ALEJANDRO; THAT the declarant knew that BLENT had gone to Cuba a few months ago; THAT when looking at BLENT's passport, it appears that he arrived in Cuba on 10/14/2023; THAT there is no date of departure from Cuba on BLENT's passport; THAT BLENT did not say anything else about ALEJANDRO to the declarant; THAT the declarant does not know why ALEJANDRO killed BLENT; THAT it could be that ALEJANDRO and BLENT were having an affair, despite not having commented anything about it; THAT BLENT helped ALEJANDRO financially, as did to others; THAT BLENT was a generous person; THAT, when the images were collected at the scene of the incident, by the segment investigation team, on 01/16/2024, a keychain was found on the table in the house, the location of the incident, which was handed over to the declarant; THAT, in the aforementioned keychain, he had the entrance key to the house, and the key to the safe; THAT the declarant had the password for the safe, and not the key; THAT the safe in BLENT's house can be opened with a key, or with a password; THAT on the day the declarant found BLENT's body, on 01/15/2024, the military police officer, reporting the incident, asked the declarant if she had his document; THAT the declarant said that she had BLENT's passport, and that it should be in the safe, and that the police officer then asked her to open it; THAT the declarant put on a glove, and opened the safe, at which time she took the document, and that there was no money in the safe; THAT, as the declarant said previously, BLENT used to leave the money on the counter in his room, or in a round box that was also on the counter; THAT DANIEL and BLEND got married on 12/09/1993, and that the dissolution of the marriage was in progress; THAT the de facto separation, between BLENT AND DANIEL, took place in January 2022; THAT after the separation, in 2022, BLENT, changed the will, placing all assets that were in DANIEL's name, in the name of his son; THAT BLENT had two wills, one made in New York, and the other made in relation to assets in Brazil; THAT BLENT, when he changed his will, sent it to the declarant; THAT DANIEL SIKKEMMA, he did not know the content of the change, but he knew that BLENT would make changes; THAT, in relation to the properties in CUBA, one property was already in the name of the son, and another in the name of an aunt of DANIEL; THAT yesterday, on 01/17/2024, the declarant passed the content of the will to DANIEL; THAT the declarant does not know the password for BLENT's cell phone, as he always changed it; THAT the person who changed the password on BLENT's cell phone was the personal and BLENT's gallery IT support; THAT the declarant spoke to the employee, MEG - +1 (917) 2503616, who would speak to the person responsible about the



**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
Idioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT- 31180           BOOK No. 214           PAGE No. 004

password; THAT, the declarant believes that BLENT was sleeping when he was stabbed; THAT BLENT had the habit of sleeping naked with a towel underneath his body, the way he was found; THAT he said nothing more;"
The accused ALEJANDRO, a Cuban citizen, in index 413 confesses in detail to the crime of aggravated homicide, explaining all his past relationships with DANIEL SIKKEMA, the victim's ex-husband, pointing to him as the mediate author of the crime, the promises of reward made by DANIEL in exchange of the victim's death, the monetary transfers already made, denying, however, that he had taken any of the victim's belongings: THAT he provides his statement accompanied by his lawyers Dr. GREGÓRIO ANTÔNIO FERNANDES DE ANDRADE, OAB/MG: 166925 and Dr. EDNA FERREIRA DE CASTRO LOURENÇO BARCELOS, OAB/RJ: 226784; THAT, in this act, he is aware of his constitutional rights, including to remain silent, but chooses to give his version of the facts; THAT he gives a statement inside the Joaquim Ferreira de Souza Public Prison, where he is detained; THAT initially, the declarant would like to report that he is extremely sorry and is depressed due to the crime committed against the victim BRENT SIKKEMA; THAT the declarant worked as a teacher at a polytechnic school in Havana, Cuba; THAT in 2019, his maternal grandfather passed away and the declarant needed more money to help support the family; THAT the declarant starts looking for a job on Facebook and found a vacancy to work as a security guard in a house located in the region known as Bosque, in Havana; THAT this region is surrounded by Cuban military bases; THAT the advertisement had been broadcast by DANIEL SIKKEMA, the victim's ex-husband; THAT it was DANIEL himself who interviewed and hired the declarant; THAT the declarant performed mandatory military service in Cuba, having even joined the special forces of the Cuban army (Green Berets); THAT DANIEL knew this and, therefore, the declarant was recruited to guard the house in Bosque; THAT for most of the year, the house was empty, DANIEL, who lived in New York, only visited the property a few weeks during the year; THAT despite the house being surrounded by military bases, DANIEL feared for his safety, due to the fact that he had dual citizenship: Cuban and American; THAT, the fact that DANIEL was American, had renounced his Cuban citizenship, had married an American and was homosexual, was not well regarded by the Cuban regime, which left the property vulnerable to the commission of crimes; THAT he worked in that house for a year and during that time he never saw BRENT SIKKEMA; THAT DANIEL visited the house only with LUCAS, the couple's son; THAT BRENT used to visit Cuba, but never stayed at the Bosque house; THAT the declarant believes that BRENT never resided in Cuba; THAT BRENT had a penthouse in Havana that he believes is in the name of DANIEL's cousin, whose name he cannot provide; THAT the declarant believes that Casa do Bosque is in the name of BRENT; THAT the declarant decides to come to Brazil, as the salary he received as a security guard was no longer enough to support himself and his family; THAT, the declarant obtains a Brazilian visa in December 2021 and moves to Brazil in September 2022, settling in a property in the city of São Paulo that belonged to ROSE REIS DE SOUZA, a friend of his mother; THAT, arriving in Brazil, he spent approximately a month at ROSE's house and then moved to a kitnet that belonged to ROSE; THAT he paid about two months of rent to ROSE, until the moment she released him from paying her any amount; THAT the declarant supported himself by doing odd jobs; THAT since he stopped working as a security guard, he stopped communicating with DANIEL and only resumed contact in 2023; THAT he believes that in November 2022, ROSE gave the declarant a XIAOMI REDMI 9A phone, considering that the Samsung J4 phone he brought from Cuba did not work well; THAT, during the activation of this new cell phone, the declarant downloaded his old contacts that were stored in the cloud; THAT he noticed DANIEL's contact, but only went to look for him in the middle of 2023; THAT, as HMM had not spoken to DANIEL for many months, the declarant decided to send a Whatsapp message to find out how DANIEL was doing; THAT DANIEL said he was going through a difficult divorce process with BRENT, to which the declarant responded that he could provide emotional support, if necessary; THAT about 10 minutes later, DANIEL calls the declarant and tells him all the problems he had with BRENT; THAT DANIEL complained about the low value of the pension that BRENT passed on to DANIEL; THAT DANIEL said that BRENT spent a lot of money on drugs, parties and prostitutes and there wasn't enough left over to help support LUCAS; THAT DANIEL offered two thousand US dollars (USD 200,00.00) to the declarant if he agreed to kill BRENT; THAT, in addition, DANIEL also promised the declarant that he would help him financially with whatever the declarant needed; THAT DANIEL promised the declarant that he could live in the house located at Rua Abreu Fialho, 13, in Jardim Botânico, taking care of the property as a caretaker; THAT the declarant said he would think about the proposal; THAT from New York, through the company Western Union, DANIEL starts sending dollars to the declarant; THAT the first remittance was in the amount of three hundred US dollars (USD 300.00), the second one thousand US dollars (USD 1,000.00) and the others around five hundred US dollars (BRL 500.00) monthly; THAT the transfers, for the most part, were sent by a man named PEDRO from New York; THAT the declarant believes that one of these transfers was made in the name of DANIEL, but is not sure; THAT DANIEL had access to BRENT's AirBnB website account and, through this, was able to monitor the



**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
Idioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
*Telefone/Phone/Whatsapp* +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No.  WT- 31180         BOOK No. 214            PAGE No. 005

victim's travels; THAT DANIEL instructs the declarant to obtain a Brazilian driver's license, buy a new cell phone and informs BRENT's data and address in Rio de Janeiro; THAT, the declarant was asked if he was intimate with DANIEL SIKKEMA, and responded that his contact with him was professional; WHO says that, over time, he became close to DANIEL's son, LUCAS, and says that he felt affection for him; THAT he considers DANIEL to be a manipulative person; THAT DANIEL's contact on the declarant's cell phone was saved as "DANIEL BOSS" and also as "ZALGUIEN"; THAT regarding the ZALGUIEN contact, the declarant states that it was DANIEL who instructed him not to save him with his real name; THAT this is DANIEL's current contact in the United States; THAT DANIEL told the declarant to buy a cell phone chip, so that it could be enabled on the declarant's phone and, in this way, the Whatsapp access code could be given to DANIEL; THAT the declarant did so and the CPF number that would be used to register the line was informed by DANIEL; THAT DANIEL sent a photo of a document, which the declarant does not know what it is, but which contained the aforementioned information; THAT the declarant does not remember who the person holding the CPF was, only knowing that the first name was MARIA; THAT the declarant does not know who this MARY is; THAT DANIEL would use this line exclusively to communicate with the declarant via Whatsapp using a Wi-Fi network; THAT the calls and messages were always via Whatsapp and the contact name was RAIMUNDO DOMINGUEZ and the number was +55 (11) 99243-3295; THAT before July 2023 (he does not know when), DANIEL sends the declarant, by post, a copy of the key to the house located at Rua Abreu Fialho, 13, Jardim Botânico; THAT DANIEL sends the key from New York and the declarant goes to pick it up at a DHL unit in São Paulo; THAT the declarant, in July or August 2023, comes to Rio de Janeiro with the intention of planning how he would carry out the crime; THAT the declarant stays in a house in Jardim Botânico, close to the victim's address, and expenses were paid with the dollars sent by DANIEL; THAT he rented the house through the AirBnB website; THAT at that time he was still deciding whether or not to accept DANIEL's proposal; THAT DANIEL had told the declarant that BRENT would not be home during this period; THAT he went to Rio de Janeiro and returned to São Paulo by bus; WHO returned to Rio de Janeiro in December 2023; THAT again went by bus and stayed; in a house in Jardim Botânico, rented through AirBnB; THAT DANIEL had warned him that BRENT would be home this time; THAT the declarant entered the residence using the key sent by DANIEL; THAT, inside the house, he called DANIEL and informed him that BRENT was sleeping in the room and that the door was locked; THAT DANIEL instructed the declarant to do something to get BRENT out of the room, but the declarant is still undecided; THAT the declarant turns off the residence's circuit breaker to force BRENT to leave the room; THAT the declarant notices that BRENT wakes up, but, very nervous, the declarant decides to leave the house, without committing the homicide; THAT, the declarant states that DANIEL instructed him to tell BRENT, if he was discovered inside the residence, that he was the son of SIMONE, his lawyer; THAT the declarant returns to São Paulo; THAT DANIEL gets upset with the declarant and stops sending him money, saying "IF YOU DON'T WANT TO DO THIS, DON'T DO IT, BUT FORGET THAT I EXIST"; THAT without receiving money from DANIEL, the declarant starts working making deliveries for the company Mercado Livre, using a FIAT/PALIO that was lent to him by ROSE; THAT neither ROSE nor anyone in her family knew of the plan to murder BRENT; THAT, the declarant, finding himself without money to support himself and send to his family in Cuba, decides to accept DANIEL's proposal; THAT, taking advantage of the fact that ROSE's car was at her disposal, as she had traveled, the declarant leaves for Rio de Janeiro on 01/13/2024 early in the morning; THAT arrives in Rio de Janeiro around 2pm and initially remains parked on a street perpendicular to Rua Abreu Fialho; THAT, at around 4:30 pm, he parks the vehicle on Rua Abreu Fialho, close to BRENT's house; THAT at a certain point, he moves to the back seat of the vehicle so that he would not be seen by pedestrians; THAT, at around 3:30 am on 01/14/2024, the declarant noticed that the street was empty and decided to enter the residence and carry out the crime; THAT the declarant, using the key sent by DANIEL, enters the property; THAT DANIEL had warned the declarant that BRENT was at home and that he was only sleeping on medication; THAT the declarant entered quietly and searched every room to ensure that BRENT was alone; THAT he went to the kitchen where he took the knife used in the crime from the cutlery; THAT he went up the stairs carefully so as not to make any noise and went to BRENT's room and, upon opening the door, found the victim lying on the bed; THAT he remembers stabbing the victim approximately four times; THAT, upon confirming that BRENT was dead, he covered him with the blanket, pillows and towels, considering that he did not want to look at the victim's face; THAT he returned to the kitchen, washed his hands and the knife in the sink and returned the knife to the cutlery; THAT he left the house, got into the car and returned to São Paulo; THAT immediately after getting in the car, he calls the line +55 (11) 99243-3295 to speak to DANIEL, but he does not answer; THAT, around 7am on 01/14/2024, DANIEL calls the declarant and he tells him details of what happened; THAT DANIEL had said that he would get rid of the cell phone he used to communicate with the declarant after the crime; THAT DANIEL instructed the declarant to delete the call log, but the declarant did not do so; THAT he arrived in São Paulo, went to



**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**

TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
Idioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
Telefone/Phone/Whatsapp +55 11  9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No.  WT- 31180        BOOK No. 214        PAGE No. 006

home, took a shower and tried to sleep, but he could not; THAT the declarant parks the PALIO at ROSE's house; THAT DANIEL contacts the declarant through the number of his relative MAYRA, saying that the Rio de Janeiro police already had images of the declarant and the license plate of the car used; THAT DANIEL said that the declarant should leave Brazil; THAT, the declarant does an internet search and finds that the news of BRENT's death had already been published in the media; That he saw images of himself and PALIO in the reports; THAT, the declarant leaves São Paulo driving a PALI WEEKEND that he had purchased with the money sent by DANIEL; THAT the declarant carried with him three thousand US dollars (USD 3000.00) and three thousand and one hundred Brazilian Reais (BRL 3,100.00) that DANIEL had sent him by mail; That the declarant had purchased a crossbow on the Mercado Livre website for two thousand and three hundred Brazilian Reais (BRL 2,300.00) and planned to use it to kill BRENT; THAT he took the beast with him on 01/13/2024 and left it inside the car; THAT at a certain point, he pulls the vehicle seat back to arm the crossbow; THAT the declarant gave up using the crossbow and chose to use a knife; WHO claims not to know BELKIS ZULUETA; THAT, to communicate with the declarant, DANIEL also used MAYRA's phone number, who is DANIEL's cousin or aunt; THAT DANIEL only started using MAYRA's contact number after the crime; THAT the declarant does not know MAYRA, but knows that she lives with DANIEL in New York; THAT DANIEL told the declarant that he was having problems with a cousin, whose name the declarant does not know; THAT BRENT would have transferred a property to this cousin, as no one can have more than one property in Havana; THAT the cousin had taken possession of the property and refused to leave; THAT DANIEL was looking for someone in Cuba who was willing to beat his cousin's husband and even asked ALEJANDRO for a recommendation; THAT this cousin asked for twenty thousand US dollars (BRL 20,000.00) to leave the house; THAT ALEJANDRO states that he did not steal any of BRENT's belongings from the residence; THAT the declarant said he did not see any money or safe in the house; THAT DANIEL told the declarant that he was concerned about the relationship that BRENT was maintaining with a Uruguayan or Paraguayan citizen, and that this could in some way harm DANIEL in the distribution of assets; THAT the declarant planned to flee across the border with Peru. And he said nothing more."

According to the Necropsy Report: "(...) multiple angled, incised and perforoincised, linear wounds are observed, some superficial (by sliding mechanism), others deep (by pressure and perforation mechanism), with regular edges and slopes, located on the face and trunk, totaling eighteen (18) cutting and piercing actions; among the injuries, one was transverse in the anterior portion of the neck that did not reach the trachea or cervical vessels; the injuries that perforated are concentrated in the left hemithorax; there are no defensive injuries to the upper limbs (...)"

This is a crime of concrete gravity, with great social repercussion, in the case of a foreign victim residing in Brazil, committed according to the evidence, for payment, for a futile reason and with several stab wounds, without the victim's defense.

The accused are foreigners, DANIEL is in an unknown and unknown location (supposedly abroad) and ALEJANDRO confesses that he intended to flee across the border with Peru after being discovered.

In this way, there is evidence of authorship, despite the fact that imprisonment is an exceptional measure in the constitutional order, which is only justified to protect interests that override the individual's ius libertatis, the circumstances that guide the investigation of the fact are recommending the adoption of the precautionary measure, therefore I DECREATE THE PREVENTIVE PRISONS of ALEJANDRO TRIANA PREVEZ and DANIEL SIKKEMA, which I do based on arts. 311 and 312, of the Code of Criminal Procedure, to guarantee public order, for the convenience of criminal investigation and to guarantee the future application of criminal law, this being an absolutely essential measure to protect the means and ends of this criminal action, the Precautionary Measures provided for in Article 319 of the CPP are not sufficient.

Arrest Warrants are issued, with a period of twenty (20) years for compliance, as well as due communications.

3)      Considering that there is news that the accused DANIEL is abroad, send the Arrest Warrant to Interpol's Red Notice, through the competent Federal Police channel. This court is now committed to requesting the extradition of the accused, in the event of his location and arrest abroad.

Considering the weekend and public holiday, as well as the possibility of the accused moving - also abroad - where he is supposed to be, send the Arrest Warrant, the main documents (Complaint; Decision; photo of the accused - if any; letter requesting inclusion, containing the legal transcript of the type of crime charged and the commitment made by this court) to the Judiciary Duty to establish contact with the competent sector of the Federal Police.

4)      Let the parties know. Publish, Register, Inform and Comply.

Rio de Janeiro, 09/02/2024.
Signed: [Blank].
Name: Tula Correa de Mello



**REPÚBLICA FEDERATIVA DO BRASIL**
*FEDERATIVE REPUBLIC OF BRAZIL*
**ANTONIO DARI ANTUNES ZHBANOVA**

TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL - *CERTIFIED PUBLIC TRANSLATOR*
Idioma/Language: Inglês - Português/*English - Portuguese*
Matrícula Jucepe nº 406 • CPF 756.770.758-68
Rua Princesa Isabel nº 206 - Aloisio Pinto - Garanhuns (PE) CEP : 55.292-21 0
Telefone/Phone/Whatsapp +55 11 9 8784 1006 – (87) 92000-9314 - e-mail: dari.zhbanova@gmail.com  (skype: antonio.dari)

TRANSLATION No. WT- 31180          BOOK No. 214          PAGE No. 007

Title: Official Judge
Case files received from Honorable Judge
Tula Correa de Mello
On [blank]
Authentication Code: 4TTU.DL6K.4C2Z.4FU3
This code shall be verified at: www.tjrj.jus.br - Services - Document Validation
110
TULA
TULA CORREA DE MELLO:24701
[Seal]
Signed on 02/10/2024 09:19:02 am
Place: TJ-RJ

================================================================================

NOTHING ELSE was contained in said original, which I return with this faithful translation. In WITNESS WHEREOF, I have here set my hand and seal of office, this March 20, 2024.

Emoluments according to the law.

**This document has been digitally signed by Antonio Dari Antunes Zhbanova.
To verify the signature, visit the website below and enter the code provided.**






Este documento foi assinado digitalmente por ANTONIO DARI ANTUNES ZHBANOVA.
Para verificar as assinaturas acesse https://www.qrassinaturas.com.br/
e informe o código L4GK-93T6-7C2R-HGWX

